IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Greenwich Insurance Company, ) | Civil Action No.: 4:11-cv-02743-RBH |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| Joe Garrell, Joe Garrell & Associates, Inc. ) | |
| d/b/a Litus Group, Garrell Properties, LLC ) | |
| d/b/a Litus Group, ) | |
| ) | |
| Defendants, ) | |
| ) | |
| and ) | |
| ) | |
| Carol P. Moore, individually and on behalf ) | **ORDER** |
| of LandBank LLC, LandBank Fund IV ) | |
| LLC, and LandBank Fund V, LLC, ) | |
| E. Wade Byrd, Jr. and Nancy W. Byrd ) | |
| Living Trust, individually and on behalf ) | |
| of LandBank Fund IV, LLC, Benton H. ) | |
| Walton, III, individually and on behalf ) | |
| of LandBank, LLC and LandBank Fund V ) | |
| LLC, Charles L. Tate Jr., individually and ) | |
| on behalf of LandBank, LLC, J.D. ) | |
| Carmichael, individually and on behalf ) | |
| of LandBank Fund, IV, LLC, Wilbur C. ) | |
| Ward, individually and on behalf of ) | |
| LandBank Fund IV, LLC and Joyce Ward, ) | |
| individually and on behalf of LandBank ) | |
| Fund IV, LLC and LandBank, LLC, ) | |
| ) | |
| Necessary Party Defendants. ) | |
| _____ ) | |

Plaintiff Greenwich Insurance Company ("Greenwich") filed this declaratory judgment against Defendants Joe Garrell and other related entities (the "Garrell Defendants") seeking a declaration that it has no duty to defend or to indemnify the Garrell Defendants in a pending state court action. This matter is before the Court on the following motions: (1) Greenwich's Motion for

Judgment on the Pleadings and to Dismiss under Federal Rules of Civil Procedure 12(b)(6) and 12(c), requesting that this Court declare that Greenwich has no duty to defend the Garrell Defendants and dismiss the Garrell Defendants' counterclaims ("Motion for Judgment on the Pleadings") [Doc. # 22]; and (2) the Garrell Defendants' Motion for Summary Judgment, requesting that this Court dismiss Greenwich's causes of action against them, declare that Greenwich has a duty to defend and that their actions constitute bad faith, and award attorney's fees ("Motion for Summary Judgment") [Doc. # 34]. For the reasons discussed below, both motions are denied.[1]

### Undisputed Facts

This is a declaratory judgment action involving a determination of whether insurance coverage exists for the Garrell Defendants in connection with an amended complaint[2] filed in the Court of Common Pleas for the Fifteenth Judicial Circuit in Horry County, South Carolina, captioned *Carol P. Moore, et al. v. Joe Garrell, et al.*, No. 2011-CP-26-6863.

### I.     Garrell Defendants

The Garrell Defendants are a group of related entities that perform, among other functions, real estate services. Specifically, one or more of the Garrell Defendants assist various investors with the purchase and sale of commercial real estate. Whenever the investors enter into a new real estate transaction, a new single-purpose entity is formed with various members. These entities are typically

---

[1] Under Local Rule 7.08, "hearings on motions may be ordered by the Court in its discretion. Unless so ordered, motions may be determined without a hearing." The issues have been briefed by the parties, and the Court believes a hearing is not necessary.

[2] This declaratory judgment action was filed prior to the amended complaint in the underlying state court action. [*See* Compl., Doc. # 1.] However, the pending motions were all filed after the amended state court complaint, and the parties agree that the amended state court complaint, which is attached both to the Garrell Defendants' Answer and to Greenwich's Motion for Judgment on the Pleadings, is the operative state court complaint.

2

identified as LandBank Fund or LandBank, with the various entities being distinguished by separate Roman numerals ("LandBank Entities"). The LandBank Entities are managed by the LandBank Resource Management Board ("LBRM Board"), which is comprised of members elected from the investors or parties involved in real estate transactions related to the LandBank Entities.

## II.     The Goodstein Lawsuit[3]

In July 2006, LandBank Fund XIII, one of the LandBank Entities, entered into a real estate sales contract with Arnold Goodstein. Specifically, Landbank Fund XIII's contract with Mr. Goodstein was for the sale and purchase of real property along the Atlantic Intracoastal Waterway in Horry County, South Carolina. It appears that at least a portion of the property was represented to be a former landfill. However, further research revealed that the property was suitable for single and multipurpose residential development, making it potentially more valuable than the contract price. According to Greenwich, restrictions on residential development were then fraudulently placed upon the deed prior to sale. The putative transaction between Mr. Goodstein and LandBank Fund XIII ultimately fell through.

In 2007, the LBRM Board initiated suit against Mr. Goodstein for his alleged failure to provide earnest money pursuant to his agreement with LandBank Fund XIII (the "Goodstein Lawsuit"). None of the Garrell Defendants were ever made a party to the Goodstein Lawsuit. It appears that there was some discussion among members of the LBRM Board in 2010 to add one or more of the Garrell Defendants as a party. However, this was never done. According to the Garrell

---

[3] It does not appear from the record that this Court has been provided the pleadings or any other filings from the Goodstein Lawsuit, and Mr. Goodstein is not a party to either the underlying state court action or this federal declaratory judgment action. Accordingly, this Court's recitation of the facts is based solely upon the parties' representation of what occurred during the Goodstein Lawsuit.

Defendants, counsel advised the LBRM Board that it should not add Mr. Garrell or any of his related entities as a party to the Goodstein Lawsuit as there was no basis for a claim against them. In support of this proposition, the Garrell Defendants attach an email to their Answer, the authenticity of which Greenwich does not dispute, which is dated September 27, 2010, and appears to be from an attorney offering advice regarding the Goodstein Lawsuit. In the letter, the attorney states that LandBank Fund XIII could possibly have a "tough" claim against Mr. Garrell for indemnification after the Goodstein Lawsuit, but the letter also states that "it would be a mistake . . . to try and sue [Mr. Garrell] or try to have him added as a party. For the life of this case we have argued that the efforts taken by [Mr. Garrell] were appropriate . . . ." [Counsel Ltr., Doc. # 7-2, at 1.]

Sometime in early 2011, the Goodstein Lawsuit settled by way of a payment to Mr. Goodstein. Other than the discussion about potentially adding one or more of the Garrell Defendants as a party, no action was requested from any of the Garrell Defendants.

**III.     The Policy**

In February 2011, Greenwich issued a professional liability insurance policy (the "Policy") to one of the Garrell Defendants, Joe Garrell & Associates, Inc., d/b/a Litus Group. It is unclear from the record whether the Goodstein Lawsuit settled before or after Greenwich issued the Policy; although the parties appear to agree that the two events occurred close in time.

The Policy provides coverage for certain acts and omissions in the performance of real estate services by the named insured and various entities or individuals affiliated with the named insured. The Policy defines real estate services, in part, as "those professional services performed for others in the insured's capacity as a real estate agent [or] real estate broker . . . ." [Policy, Doc. # 1-2, at 15.] As a condition of coverage, a claim for which the insured seeks coverage cannot have been

4

made prior to the Policy's February 2011 inception date. Moreover, the Policy provides coverage is available for a claim unless, prior to the Policy's inception, the insured had "a basis to believe that [the act or omission at issue], or any related act or omission, might reasonably be expected to be the basis of a claim." [*Id.*]

## IV.    The Underlying Lawsuit in State Court

On August 15, 2011, a number of member-investors in the LandBank Entities, proceeding in their individual capacities and on behalf of the LandBank Entities ("Underlying Plaintiffs"),[4] filed a complaint in Horry County, South Carolina, which they amended on November 11, 2011. The amended complaint spans seventy-two pages, lists more than fifty defendants, and contains fifteen causes of action spelled out in three hundred and sixty-three numbered paragraphs. Among these defendants are several attorneys who have performed work for the LandBank Entities, other LandBank Entity members, the LBRM Board, and the Garrell Defendants. The amended complaint claims that the defendants have caused great economic damage to the Underlying Plaintiffs, and states a number of wide-ranging allegations, including fraud, violation of South Carolina's Unfair Trade Practices Act, breach of fiduciary duty, and negligence.

According to the Garrell Defendants, the lawsuit includes claims against the Garrell Defendants for acts and omissions in the performance of real estate services. In support of this argument, the Garrell Defendants point to the following allegations in the underlying amended complaint, among others:

---

[4] The Underlying Plaintiffs are listed as Necessary Party Defendants in this action, and have filed a one-paragraph Response to the Garrell Defendants' Motion for Summary Judgment stating that the Garrell Defendants should be provided with a defense and full coverage in the underlying lawsuit.

- At all times relevant hereto, [Garrell Defendant Mr. Garrell] was acting within the scope of his agency with [Garrell Defendant Litus] and the other Landbank affiliated entities as described herein. [Am. State Court Compl., Doc. # 22-1, at ¶ 18.]

- At all times relevant hereto, [Garrell Defendant Litus] was in fact the Plaintiffs and/or the Plaintiffs companies' real estate agent for LandBank matters, and held itself and [Garrell Defendant Mr. Garrell] out as their real estate agent. [*Id.* at ¶ 20.]

- [Garrell Defendant Litus] did not adequately supervise [Garrell Defendant Mr. Garrell] , knew or should have known of the misconduct complained of herein, and otherwise failed in the discharge of its obligations to the Plaintiffs and/or Plaintiffs' companies, and otherwise conducted itself in a manner inconsistent with, and in violation of, the standard of care owed to the Plaintiffs . . . ." [*Id.* at ¶ 22.]

- The Garrell Defendants have omitted material information about the transactions described in the complaint. [*Id.* at ¶ 159.]

- The Garrell Defendants have falsely represented certain information regarding cable agreements and rights. [*Id.* at ¶ 190.]

- Joe Garrell, Garrell & Associates, LLC, and Garrell Properties, LLC made negligent misrepresentations to the Plaintiffs regarding the Goodstein transaction and other Landbank opportunities. [*Id.* at ¶ 287.]

After the underlying state court action was filed, the Garrell Defendants sought coverage from Greenwich under the Policy. Although Greenwich agreed to provide a defense, it did so "subject to a full and complete reservation of rights." [Compl., Doc. # 1, at ¶ 57.]

On October 7, 2011, Greenwich filed the declaratory action before this Court, seeking a ruling that it has no duty to either defend or indemnify the Garrell Defendants. Greenwich contends the pending state court action never triggered coverage because the Garrell Defendants failed to abide by certain Policy conditions – all of which appear to center on the Garrell Defendants' knowledge of, or involvement with, the Goodstein Lawsuit. Greenwich also argues at least six exclusions bar coverage.

6

On December 21, 2011, the Garrell Defendants Answered Greenwich's Complaint, and filed counterclaims for breach of contract, bad faith, and attorney's fees. On March 9, 2012, Greenwich filed its Motion for Judgment on the Pleadings, while the Garrell Defendants filed their Motion for Summary Judgment on July 25, 2012. Both motions have been fully briefed.

**Standard of Review**

Because this case involves both a motion for judgment on the pleadings and a motion for summary judgment, the Court will discuss both standards of review.[5]

**I.      Judgment on the Pleadings**

Federal Rule of Civil Procedure 12(c) provides, "After the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Courts follow "a fairly restrictive standard" in ruling on 12(c) motions, as "hasty or imprudent use of this summary procedure by the courts violates the policy in favor of ensuring to each litigant a full and fair hearing on the merits of his or her claim or defense." *Pellegrin v. Berthelsen*, No. 9:11–cv–00125, 2012 WL 10847, at *1 (D.S.C. Jan. 3, 2012) (quoting 5C Charles A. Wright and Arthur R. Miller, Federal Practice and Procedure § 1368 (3d ed. 2011)). A party "may not prevail on a motion for judgment on the pleadings if there are pleadings that, if proved, would permit recovery" for the non-moving party. *BET Plant Servs., Inc. v. W.D. Robinson Elec. Co.*, 941 F. Supp. 54, 55 (D.S.C. 1996).

"[A] Rule 12(c) motion for judgment on the pleadings is decided under the same standard as

---

[5] Greenwich's Motion for Judgment on the Pleadings also seeks dismissal of the Garrell Defendants' counterclaims under Rule 12(b)(6). However, "a Rule 12(c) motion for judgment on the pleadings is decided under the same standard as a motion to dismiss under Rule 12(b)(6)." *Deutsche Bank Nat'l Trust Co. v. I.R.S.*, 361 Fed. App'x 527, 529 (4th Cir. 2010). Thus, the standard of review for a motion to dismiss under Rule 12(b)(6) is discussed herein.

a motion to dismiss under Rule 12(b)(6)." *Deutsche Bank Nat'l Trust Co. v. I.R.S.*, 361 Fed. App'x 527, 529 (4th Cir. 2010); *see also Burbach Broad Co. v. Elkins Radio*, 278 F.3d 401, 405 (4th Cir. 2002). Thus, in order to survive a motion for judgment on the pleadings, the pleadings must contain sufficient facts "to raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In reviewing the pleadings, the court accepts all well-pleaded allegations as true and construes the facts and reasonable inferences derived therefrom in the light most favorable to the non-moving party. *Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). "If, on a motion under Rule . . . 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d).

## II.     **Summary Judgment**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322– 23 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate." *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or by "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, a court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

## Discussion

Greenwich's Motion for Judgment on the Pleadings and the Garrell Defendants' Motion for Summary Judgment are denied as to each issue raised in the respective motions.[6]

## I.    Coverage

Greenwich claims that as a matter of law coverage has not been triggered and thus it has no

---

[6] Although each motion requires a distinct standard of review, both motions address many of the same issues. Thus, for purposes of clarity, the Court will proceed issue-by-issue and apply the appropriate standard of review in analyzing each party's arguments.

duty to defend.[7] In contrast, the Garrell Defendants argue that Greenwich has a duty to defend

because the amended complaint in the pending state court action triggered coverage under the Policy

as a matter of law. The Court finds that a dispute of fact exists as to whether or not the pending state

court complaint triggered coverage under the Policy.[8]

      "If the facts alleged in the complaint raise a reasonable possibility that the insured may be

held liable for some act or omission covered by the policy, then the insurer must defend. If no such

possibility is raised, no duty of defense is owed." *Liberty Life Ins. Co. v. Commercial Union Ins. Co.*,

857 F.2d 945, 949 (4th Cir. 1988). Accordingly, an insurer's duty to defend is determined by the

allegations made in the complaint and "facts outside of the complaint that are known by the insurer."

*Graphic Arts Mut. Ins. Co. v. Caldwell Chevrolet, Inc.*, No. 0:11–01255, 2013 WL 314450, at *3

(Jan. 25, 2013) (quoting *USAA Prop. & Cas. Ins. Co. v. Clegg*, 377 S.C. 643, 657, 661 S.E.2d 791,

798 (2008)). Thus, whether a duty to defend exists is determined by comparing the allegations of the

complaint and the facts that are known by the insurer to the terms of the policy. *Id.; see also Liberty

Life*, 857 F.2d at 949–50.[9]

---

[7] Greenwich's Complaint seeks a declaratory judgment that it had no duty to defend or to
indemnify the Garrell Defendants. [*See* Compl., Doc. # 1.] To the extent Greenwich's Motion
for Judgment on the Pleadings also seek a ruling that there was no duty to indemnify as a
matter of law, the factual issues discussed herein particularly advise against such a legal
conclusion. *See, e.g.*, *Penn-America Ins. Co. v. Coffey*, 368 F.3d 409, 413 (4th Cir. 2004).
("[A]n insurer's duty to indemnify will depend on resolution of facts alleged in the complaint
. . . .").

[8] This holding applies to the issue of whether the amended complaint in the pending state court
action triggered coverage under the Policy; this section does not address the applicability of
potential exclusions. As the parties have done, this Court has addressed exclusions in a
separate section.

[9] The parties agree that the Policy, which was issued to the Garrell Defendants in South
Carolina, is governed by South Carolina law. [*See* Greenwich Mot., Doc. # 22, at 11; Garrell
Resp., Doc. # 29, at 8.]

10

**A.     Greenwich's Motion**

In its Motion for Judgment on the Pleadings, Greenwich argues there was no coverage because, prior to the issuance of the Policy, the Underlying Plaintiffs first made a claim against the Garrell Defendants; in the alternative, Greenwich argues the Garrell Defendants had knowledge of an act or omission that they might reasonably expect to form the basis of a claim. [Greenwich Mot., Doc. # 22, at 9–10.] Greenwich's arguments are based upon the Underlying Plaintiffs' supposed communication with the Garrell Defendants regarding the Goodstein Lawsuit, which was commenced three years before issuance of the Policy. [*Id.*] Greenwich's argument fails.[10]

First, in examining the amended complaint in the state court action, this Court cannot say as a matter of law that a claim was made against the Garrell Defendants. As a condition of coverage, the Policy requires that any claim must "first be made against" the Garrell Defendant's during the policy period. [Policy, Doc. # 1-2, at 15.] The Policy further defines a claim as "a demand for money or services . . . ." [*Id.* at 17.] Thus, coverage is available under the Policy so long as the claim, or claims, for which the Garrell Defendants seek coverage had not been made prior to the Policy's February 2011 inception date.

Here, the Garrell Defendants seek no coverage for the Goodstein Lawsuit, which has since been resolved. [Garrell Resp., Doc. # 29, at 10–11.] Although Greenwich claims that the Underlying Plaintiffs made a monetary demand from the Garrell Defendants during the Goodstein Lawsuit, this

---

[10] Greenwich also argues that Garrell Properties, LLC, one of the many Garrell Defendants, does not meet the definition of an "insured" under the Policy. The Garrell Defendants vigorously dispute this assertion. Because this Court is otherwise denying Greenwich's Motion for Judgment on the Pleadings, a ruling on this ground is not dispositive of the entire case. Thus, Greenwich's Motion is denied without prejudice to its right to raise this issue at the bench trial in this matter.

is unsupported by the amended complaint in the state court action. The provision of the amended complaint cited by Greenwich merely states that the Underlying Plaintiffs, presumably through their affiliation with the LBRM Board, demanded that certain parties in the Goodstein Lawsuit add the Garrell Defendants as a party. [Am. State Court Compl., Doc. # 22-1, at ¶ 228.] In addition to the record showing that the Underlying Plaintiff's never actually demanded any money or services from the Garrell Defendants in the Goodstein Lawsuit, the Garrell Defendants were never made a party to that action. [*See* Greenwich Mot., Doc. # 22, at 7–10; Garrell Resp., Doc. # 29, at 19.]

Further, in their Answer, the Garrell Defendants claim that they were informed by counsel that "no claim would be made against [them in the Goodstein Lawsuit and] that there was no basis for such claim as regards the [Goodstein Lawsuit] . . . ." [Garrell Ans., Doc. # 7, at ¶ 106; Counsel Ltr., Doc. # 7-2.] Additionally, as the Garrell Defendants note in their Response, Mr. Goodstein is not a party to the underlying state court action, and the transaction at issue in the Goodstein Lawsuit involved property held by only one of the several LandBank Entities. [Garrell Resp., Doc. # 29, at 10–13.] For purposes of Greenwich's Motion under Rules 12(b)(6) and 12(c), and in accepting the Garrell Defendants' Answer as true and construing all reasonable inferences in their favor, Greenwich has failed to show that a claim was made against the Garrell Defendants as a matter of law.

Second, the Court cannot say, as a matter of law, that the Goodstein Lawsuit put the Garrell Defendants on notice that a future claim was likely.[11] In addition to the provision discussed above,

---

[11] In making this argument, Greenwich relies on correspondence from a party in the Goodstein Lawsuit, which was attached to the Garrell Defendants' Answer. [Ans., Doc. # 7-1, at 85–90.] These letters do not change this Court's analysis. First, the correspondence relates to the Goodstein Lawsuit, and as discussed thoroughly herein there is a genuine dispute as to what extent the Goodstein Lawsuit put the Garrell Defendants on notice of a claim, and to what

the Policy also required that coverage existed unless the Garrell Defendants had "a basis to believe that [the act or omission at issue], or any related act or omission, might reasonably be expected to be the basis of a claim." [Policy, Doc. # 1-2, at 15.] In applying similar Virginia law, the Fourth Circuit has held that such a prior knowledge provision constitutes a "condition precedent" to coverage under a policy. *Bryan Bros. Inc. v. Cont'l Cas. Co.*, 660 F.3d 827, 828 (4th Cir. 2011).

There appears to be no South Carolina or Fourth Circuit case which squarely addresses how a similarly-worded prior knowledge provision triggers coverage. *See Nat'l Specialty Ins. Co. v. Nat'l Union Fire Ins. Co. of of Pittsburgh Pa.*, No. 6:10–826, 2012 WL 1825370, at *3 (D.S.C. May 18, 2012). However, in a recent case applying South Carolina law, this Court has looked to the Third Circuit and applied a mixed two-part subjective/objective analysis to determine whether a similar prior knowledge provision permitted coverage. *Id.* (citing *Seiko v. Home Ins. Co.*, 139 F.3d 146, 152 (3rd Cir. 1998); *Coregis Ins. Co. v. Baratta & Fenertv, Ltd.,* 264 F.3d 302, 306 (3rd Cir. 2001)). "First, the court is to consider whether the insured had actual knowledge of the underlying facts which are the basis of the claim (subjective), and second, would a reasonable insured in possession of such facts have a basis to believe that these facts could constitute a claim (objective)." *Id.*[12]

---

extent any supposed acts or omissions alleged in the Goodstein Lawsuit are related to the underlying state court action.

[12] Greenwich acknowledges in its Reply that South Carolina state courts have not addressed the application of a prior knowledge provision like the one at issue here. [Greenwich Reply, Doc. # 31, at 5.] However, Greenwich cites to a number of cases to argue that "the majority of courts" favor a purely objective standard when analyzing similar policies. [*Id.*] First, even if this Court were to adopt Greenwich's proposed purely objective test, it would not alter the Court's holding. Under an objective inquiry, the Court would still be required to determine whether a reasonable insured would have a basis to believe a claim exists based upon the *underlying facts*. As discussed herein, there appears to be a genuine dispute as to the underlying facts of the Goodstein Lawsuit. Second, and most troubling to the Court, Greenwich's analysis of the authority upon which it relies is either misleading or flawed. The

13

The pleadings fail to show that as a matter of law, prior to the issuance of the Policy, the Garrell Defendants had actual knowledge of the facts which are the basis of the claim at issue, or that a reasonable insured in possession of such facts would believe they could constitute a claim. As discussed above, in construing the pleadings in favor of the Garrell Defendants, the Garrell Defendants were never made a party to the Goodstein Lawsuit, they were informed by counsel that there was no basis for a future claim against them, and the Goodstein Lawsuit involved only one of the many LandBank Entities.

Although Greenwich's Motion is made pursuant to Rules 12(b)(6) and 12(c), the Court also notes that there is at least a genuine dispute of fact as to whether the Goodstein Lawsuit put either the Garrell Defendants or a reasonable insured on notice of an act or omission that could be the basis of a claim, and to what extent any supposed act or omission in the Goodstein Lawsuit is related to the allegations in the underlying state court action.

---

cases cited by Greenwich either flatly contradict adopting a purely objective standard in analyzing prior knowledge provisions similar to the one at issue here, or deal with substantially different prior knowledge provisions. *See, e.g.*, *Colliers Lanard & Axilbund v. Lloyds of London*, 458 F.3d 231, 237 (3d Cir. 2006) ("We hold that . . . the policy exclusion mandates a subjective test for the first part of the necessary inquiry – whether the insured had knowledge of a suit, act, error, or omission – and an objective test for the second part of the necessary inquiry – whether the suit, act, error, or omission might reasonably be expected to result in a claim or suit."); *HSB Group, Inc. v. SVB Underwriting, Ltd.*, 664 F. Supp. 2d 158, 193 (D. Conn. 2009) (specifically applying a subjective-objective test); *City of Brentwood, Mo. v. Northland Ins. Co.*, 397 F. Supp. 2d 1143, 1148 (E.D. Mo. 2005) ("[T]his language instructs the court to first look at the insured's subjective knowledge 'and then the objective understanding of a reasonable [insured] with that knowledge.'"); *Holmes & Graven*, 23 F. Supp. 2d 1057, 1066 n.7 (D. Minn. 1998) (applying objective test where policy spoke only of what the insured "knew, *or could have reasonably foreseen*", but also acknowledging that courts apply a subjective test when determining whether an insured had a "basis to believe"); *Evanston Ins. Co. v. Sec. Assurance Co.*, 715 F. Supp. 1405, 1414 (N.D. Ill. 1989) (applying a purely objective test but in the context of a prior knowledge provision that discussed whether the insured "had knowledge *[or] could have reasonably forseen* [sic] any circumstance which might result in a claim").

A South Carolina district court has recently analyzed a somewhat similar situation. In that case, a professional liability policy was issued to a firm that offered both accounting and legal services. *Cont'l Casualty Co. v. Jones*, No. 3:09-cv-1004, 2011 WL 3880963, at * 3 (D.S.C. Sept. 2, 2011) (hereinafter *Jones I*). Though the accountant and the lawyer shared a professional liability policy related to accounting and operated as a single entity, they worked independently in their respective accounting practices. *Id.* at *3. The liability policy contained a prior knowledge provision which provided coverage so long as "prior to the effective date of this Policy, none of you had a basis to believe that any such act or omission, or interrelated act or omission, might reasonably be expected to be the basis of a claim . . . ." *Id.*

The accountant signed the policy, unaware that the lawyer had been committing numerous illegal acts exposing the organization to liability. *Id.* The victims of these illegal acts sued the firm. *Id.* Ultimately, coverage was requested from the accountant, and the insurer argued that there was no coverage for claims arising out of the misconduct "because a condition precedent to coverage was that no insured had knowledge, prior to the inception of the policy, of an act that was reasonably likely to become the basis for a claim against the [firm]." *Id.* at *6

In *Jones I*, the court initially granted summary judgment in favor of the insurance company. *Id.* The court examined the record in the case and determined that the claims in the underlying lawsuit all arose out of the lawyer's "scheme to defraud his clients of money and to cover his tracks. Because [the lawyer's] acts were interrelated, his prior knowledge precludes coverage in this case." *Id.* at *7. The court rejected the accountant's argument that "members of the accounting practice did not participate in the misconduct that otherwise precludes coverage under the policy." *Id.* at *6.

However, in *Jones II*, the court granted a motion to reconsider its holding. Order on Motion

15

to Reconsider, *Jones*, No. 3:09-cv-1004, at Doc. # 213 (D.S.C. filed December 13, 2011) (hereinafter *Jones II*). The court found that "the question of whether the claims against [the lawyer] by the remaining defendants in this case are interrelated [to the claims against the accountant] presents a genuine issue of material fact precluding summary judgment." *Id.* at 3–4. In a later order, the court expounded that it had "hastily granted summary judgment despite the existence of contested factual issues . . . ." *Jones*, No. 3:09-cv-1004, 2012 WL 530002, at *2 (D.S.C. Feb. 17, 2012).

The *Jones* case supports this Court's finding that genuine disputes of fact are present in the current case. Here, like *Jones*, there is a question as to what extent the claims in the Goodstein Lawsuit are related to the claims in the underlying state lawsuit. As the Garrell Defendants point out in their Response, there are numerous references in the underlying state court complaint that involve property apparently not at issue in the Goodstein Lawsuit. [Garrell Resp., Doc. # 29, at 11–12.] Resolving any such factual discrepancy is particularly relevant in analyzing the broad scope of Greenwich's duty to defend. Under South Carolina law, insurance policies are construed in favor of coverage and the duty to defend is triggered where the underlying complaint includes *any allegation* that raises the possibility of coverage. *See, e.g, M & M Corp. of S.C. v. Auto–Owners Ins. Co.*, 390 S.C. 255, 259, 701 S.E.2d 33, 35 (2010) (holding that "[p]olicies are construed in favor of coverage"); *Isle of Palms Pest Control Co. v. Monticello Ins. Co.*, 319 S.C. 12, 16, 459 S.E.2d 318, 319 (Ct. App. 1994) ("[T]he inclusion of some noncovered claims does not abrogate the insurer's duty to defend when a complaint raises claims covered by the policy."); *Town of Duncan v. State Budget and Control Bd.*, 326 S.C. 6, 16, 482 S.E.2d 768, 773–74 (1997) (same).

There are also issues here that were not present in *Jones*, which further counsel against disposing of this case at this early stage and without further factual development. One, in *Jones*, the

court reversed itself after having granted summary judgment on a well-developed record. *See Jones I*, 2011 WL 3880963, at *1–4; *Jones II*, Doc. # 214, at 1–5. Here, discovery is not complete, there is no such well-developed record, and, at least in Greenwich's case, it is seeking judgment not under Rule 56, but under Rules 12(b)(6) and Rule 12(c), which are more "restrictive." *See Pellegrin*, 2012 WL 10847, at *1. Two, summary judgment as to the accountant was ultimately denied in *Jones*, even though the lawyer, who was one of the insured parties, was plainly involved in misconduct against the individuals who ultimately filed suit against the firm. *See Jones I*, 2011 WL 3880963, at *3–4; *Jones III*, 2012 WL 530002, at * 3. In contrast, the Garrell Defendants, the insured in this case, were never a party to the Goodstein Lawsuit, which is the litigation that supposedly provided the Garrell Defendants a "basis to believe" that some future related claim would be forthcoming. [*See* Policy, Doc. # 1-2, at 15.] Three, the Garrell Defendants, unlike the accountant in *Jones*, allege that counsel and the LBRM Board informed Mr. Garrell that no claim would be made against him regarding the Goodstein Lawsuit, and that there was no basis for such a claim. [*See* Garrell Ans., Doc. # 7, at ¶ 106; Counsel Ltr., Doc. # 7-2.]

## B.     Garrell Defendants' Motion

The Garrell Defendants seek a ruling from this Court that the amended complaint in the underlying state court action triggered Greenwich's duty to defend because, as a matter of law, the complaint raises a reasonable possibility that the Garrell Defendants may be held liable for some act or omission covered by the policy. [Garrell Mot., Doc. # 34-1, at 13–14.] Although this is a *much* closer call, for the reasons discussed above there is at least a genuine dispute as to the following: (1) to what extent the Goodstein Lawsuit put the Garrell Defendants on notice of any alleged acts or omissions in the underlying state court action; (2) to what extent any supposed acts or omissions in

the Goodstein Lawsuit are interrelated to the allegations in the underlying state court action that do not reference the Goodstein Lawsuit; and (3) depending upon resolution of these first two disputes, would a reasonable insured in possession of such information have a basis to believe that these facts could constitute a claim.

Additionally, summary judgment is inappropriate because the Court must also evaluate the issues above in light of "facts outside of the complaint that are known by the insurer." *See Graphic Arts Mut. Ins. Co.*, 2013 WL 314450, at *3 (quoting *Clegg*, 377 S.C. at 657, 661 S.E.2d at 798). As the Garrell Defendants themselves argue in their Motion, "Greenwich cannot turn a blind eye to facts that have been made available to it regarding the nature and extent of the allegations against the Garrell Defendants in the underlying lawsuit . . . , including what Joe Garrell had been told . . . ." [Garrell Mot. Doc. # 34-1, at 12.] To the extent the Garrell Defendants are calling upon this Court to weigh the importance of the facts known by Greenwich, that will be appropriate at the bench trial of this case, as it is not a proper function of the Court at the summary judgment stage. *See Emmett v. Johnson*, 532 F.3d 291, 305 (4th Cir. 2008).[13]

## II.    Exclusions

Greenwich claims in its Motion for Judgment on the Pleadings that the Policy's "property syndication" exclusion operates to bar coverage as to all Garrell Defendants as a matter of law. The Garrell Defendants counter in their Motion for Summary Judgment that each of the six exclusions invoked by Greenwich in its Complaint are inapplicable based upon the record in this case.

---

[13]  The Goodstein Lawsuit, on which Greenwich bases its argument that coverage is unavailable, settled within the same time period that Greenwich issued the Policy. [*See* Compl, Doc. # 1, at ¶¶ 40, 43; Garrell Mot., Doc. # 34-1, at 8.] It could be highly relevant if Greenwich was familiar with the Goodstein Lawsuit when it issued the Policy.

For purposes of determining whether an insurer has a duty to defend, "the allegations in the [underlying complaint] must be applied to the policy in its entirety, which necessarily includes the exclusions section." *Clegg*, 377 S.C. at 657, 661 S.E.2d at 798. However, this does not change the fundamental precept of South Carolina law that the insurer bears the burden of establishing the exclusion's applicability, and that all exclusions of coverage are to be "most strongly" construed against the insurer. *See Owners Ins. Co. v. Clayton*, 364 S.C. 555, 560, 614 S.E.2d 611, 614 (2005); *M & M Corp.*, 390 S.C. at 259, 701 S.E.2d at 35.

**A.     Property Syndication Exclusion**

The parties dispute the applicability of the property syndication exclusion in the Policy.

Under the Policy, coverage is excluded if a claim is caused by "property syndication or real estate investment trusts . . . ." [Policy, Doc. # 1-2, at 22.] A previous section of the Policy defines property syndication as follows:

> [T]he formation of, or engagement in, a general or limited partnership, joint venture, unincorporated association or similar organization for the purpose of investment or gain from an interest in real property, including but not limited to a sale, exchange, trade or development of such real property, on behalf of others.

[*Id.* at 22.]

In its Motion for Judgment on the Pleadings, Greenwich claims this exclusion bars coverage for the Garrell Defendants as a matter of law. Greenwich argues that the amended complaint in the pending state court action asserts that one or more of the Garrell Defendants are members of the LBRM Board, which has control over the management and operations of the LandBank Entities. [Greenwich Mot., Doc. # 22., at 12; *see also* Am. State Court Compl., Doc. # 22-1, at ¶¶ 24–26.] Greenwich further argues that the LandBank Entities' purpose is buying and selling the property rights of large, undeveloped tracts of land. [Greenwich Mot., Doc. # 22., at 12 (citing Am. State

Court Compl., Doc. # 22-1, at ¶¶ 11, 13, 15).] According to Greenwich, LandBank's actions constitute property syndication, and because the Garrell Defendants were members of LandBank's management they too participated in property syndication and coverage is excluded for the current lawsuit.[14]

In its Motion and subsequent Reply, Greenwich cites thirteen paragraphs from the three-hundred and sixty-three-paragraph amended complaint filed in the underlying state court action to argue that the property syndication exclusion bars coverage for *all claims* against *each* of the Garrell Defendants. [*See* Greenwich Mot., Doc. # 22, at 11–12; Greenwich Reply, Doc. # 31, at 9–12.] However, the amended complaint in the state court action states that the Garrell Defendants performed real estate services, and that "at all times relevant hereto," at least one of the Garrell Defendants acted as a real estate agent and held itself and other Garrell Defendants out as such. [*See* Am. State Court Compl., Doc. # 22-1, at ¶¶ 17, 20; *see also* Policy, Doc. # 1-2, at 15 (providing coverage for acts or omissions in the performance of "real estate services").] Greenwich itself, in its subsequently filed Response to the Garrell Defendants' Motion for Summary Judgment, argues that "the Underlying Complaint is ambiguous in what capacity the Insured was acting in with regard to the real estate transactions involved in the Underlying Action." [Greenwich Resp., Doc. # 36, at 5.]

---

[14] Greenwich does not argue that the property syndication exclusion applies merely because the Garrell Defendants may have had an ownership interest in the LandBank Entities, but rather because the Garrell Defendants, assuming they were providing real estate services, provided those real estate services for an organization whose purpose was to invest in real property. [*See* Greenwich Reply, Doc. # 31, at 10.] There is a separate exclusion under the Policy that would bar coverage if the Garrell Defendants had a financial interest of greater than twenty percent of the real property at issue. [Policy, Doc. # 1-2, at 22–23.] The parties disagree over the value of the Garrell Defendants financial stake in the underlying property, and thus the applicability of this exclusion. [*See* Garrell Mot., Doc. # 34-1, at 8.] The only evidence in the record on this issue appears to be an affidavit signed by Mr. Garrell. [*Id.*]

20

In light of Greenwich's burden of proof, particularly when coupled with the current record in the case and the "fairly restrictive standard" embodied in Rules 12(b)(6) and 12(c) and, the Court cannot say as a matter of law that *all claims* were caused by purported property syndication. *See Pellegrin*, 2012 WL 10847 at *1.

The Garrell Defendants, in their Motion for Summary Judgment, appear to merely argue that Greenwich fails to establish the applicability of the property syndication exclusion, as opposed to showing that the exclusion is inapplicable as a matter of law. [Garrell Mot. Doc. # 34-1, at 26–29.] In fact, in their Response to Greenwich's Motion for Judgment on the Pleadings, the Garrell Defendants specifically state that "even assuming *arguendo*, there were allegations in the underlying complaint to support each element regarding the existence of a property syndicate, this exclusion would still not be appropriate for resolution as a matter of law." [Garrell Resp., Doc. # 29, at 26.] The Garrell Defendants have failed to carry their burden of demonstrating that summary judgment is appropriate. *See Celotex Corp.*, 477 U.S. at 322–23.[15]

---

[15]  Given this Court's disposition of the pending motions, it will reserve ruling on the Garrell Defendants' argument that the property syndication exclusion is ambiguous, and thus unenforceable as a matter of law. However, this Court feels compelled to note that Greenwich appears to take the position that this exclusion would operate to deny coverage to *any* real estate agent who performs their services for *any* organization formed for the purposes of investment in real property. [Greenwich Reply, Doc. # 31, at 10.] In its Response to the Garrell Defendants' Motion for Summary Judgment, Greenwich is even more direct. Greenwich explains that the exclusion would deny coverage for claims against a real estate agent working with such an organization, even if the claim was against the insured strictly in his capacity as a real estate agent. [Greenwich Resp., Doc. # 36, at 20–21.] However, the Policy provides coverage for acts and omissions that occur in the course of providing "real estate services," defined as "those professional services performed for others in the insured's capacity as a real estate agent, real estate broker, leasing agent, property manager, real estate auctioneer, [or] real estate appraiser . . . ." [Policy, Doc. # 1-1, at 15, 20.] In light of the stated purpose of the Policy, and under Greenwich's own interpretation of the property syndication provision, it seems difficult to fathom how the exclusion is not one "which purports to bar coverage for claims arising out of the very operation sought to be insured . . . ." *Isle of Palms*

### B.    Other Exclusions

In their Motion for Summary Judgment, the Garrell Defendants argue the remaining exclusions invoked by Greenwich in its Complaint are inapplicable as a matter of law. The Court has thoroughly reviewed the record in this case in light of the parties' arguments. Even if this Court were to grant the Garrell Defendant's Motion for Summary Judgment as to the remaining exclusions, the case would still proceed to bench trial. At this juncture, the Court finds it prudent to reserve ruling on this issue and thus denies the Garrell Defendants' Motion as to the remaining exclusions without prejudice to their right to raise these issues at the bench trial in these proceedings. *See United States v. Goodson*, 204 F.3d 508, 514 (4th Cir. 2000) ("[A] district court has broad discretion to manage its docket.").

### III.    Bad Faith and Attorney's Fees

Greenwich claims in its Motion for Judgment on the Pleadings that the Garrell Defendants' claim for bad faith fails as a matter of law, and that the Garrell Defendants are not entitled to attorney's fees. However, Greenwich's arguments on both of these grounds hinge upon it prevailing in its declaratory judgment action. [*See* Greenwich Mot., Doc. # 22, at 13–14.]

Likewise, the Garrell Defendants claim they are entitled to summary judgment on their bad faith claim, as well as an award of attorney's fees. A finding that Greenwich had a duty to defend is a prerequisite to these examining claims.  [*See* Garrell Mot., Doc. # 34-1, at 32–33.]

Given the Court's ruling herein, particularly in finding a genuine dispute of fact as to

---

*Pest Control*, 319 S.C. at 19, 459 S.E.2d 318 at 321. Under South Carolina law, such an exclusion renders "the policy ambiguous" and any ambiguity must be resolved "in favor of coverage." *Id.* However, the Court reiterates that it need not decide this issue at the present time, and the Garrell Defendants will be able to raise this argument at the bench trial.

coverage, it is plain that the applicability of bad faith and attorney's fees cannot be decided as a matter of law.[16]

### Conclusion

**IT IS THEREFORE ORDERED** that Greenwich's Motion for Judgment on the Pleadings [Doc. # 22] is DENIED *without prejudice* to Greenwich's right to raise the issues therein at the bench trial in this matter.

**IT IS FURTHER ORDERED** that the Garrell Defendants' Motion for Summary Judgment [Doc. # 34] is also DENIED *without prejudice* to Greenwich's right to raise the issues therein at trial.

**IT IS SO ORDERED.**

s/ R. Bryan Harwell
R. Bryan Harwell
United States District Judge

Florence, South Carolina
March 7, 2013

---

[16] In neither Greenwich's Motion for Judgment on the Pleadings nor in the Garrell Defendants' Motion for Summary Judgment does any party appear to address the Garrell Defendants' counterclaim for breach of contract. To the extent the parties intended their briefings to address this point, the logic governing the Court's disposition of the Garrell Defendants' bad faith claim is equally applicable to their breach of contract claim.